Good morning, Your Honors. May it please the Court. My name is Susan Hill and I represent the Hernandez family. The Hernandez's are here today because the immigration judge erred in making an adverse credibility determination against Mr. Hernandez in his testimony. The basis of her determination was because he included details that expanded upon the assertions that he made in his asylum application. Since the judge rendered her decision and since the BIA summarily affirmed it, this Court has had a decision that came out of Ferretaja in November of 2004, where the Court specifically said that an adverse credibility finding cannot be based solely on the fact that a person has included more detail in their testimony than what was included in the asylum application. And especially in this case where the further details that Mr. Hernandez provided were not inconsistent with what he had already stated in writing, either in the application or in the additional written statement that he submitted. Mr. Hernandez stated that in his application that he did not want to return to Guatemala because he had been threatened and because he did not believe in what his persecutors wanted him to do on account of his religion. What's the evidence that any of this had anything to do with his religion as far as the persecution went? He stated that he did not want to comply with the persecutors' request because he is a religious man and this does not... Well, that's what he says. That's his internal motivation. What about the persecution? As far as the persecution, the judge didn't really reach that issue. The judge said that this was a political opinion case and did not analyze or pursue the religious evidence. So is there any evidence in the record to suggest that there was any religious motivation on the part of any of the retribution, the roadblocks, all of that? It's a bit of a difficult issue because his reason for not wanting to comply with his request was a religious reason, but yet the persecutors were punishing him for his refusal. But they weren't punishing him because he was Christian. Presumably if he left his employment with the customs agency and went someplace else and were selling furniture, nobody would care that he was a Christian and any persecution would cease. It was because he was refusing to engage in this corruption that they were angry with him. It really didn't have anything to do with the fact that he was a Christian, did it? Like I said, it's tied up in itself. If he's a Christian and he goes elsewhere and sells furniture, he is not refusing to comply with something... But if he had a co-employee who believed for non-religious reasons that this was wrong and they were persecuting both of them, then your client would get asylum because he was motivated by his religious beliefs and the other one would not get asylum because he was not motivated by his religious beliefs? Your Honor, I think it's a technicality in the law in that the applicant has to, to an extent, determine what is the basis of the persecutor's motive. In your hypothetical, Mr. Hernandez did not want to comply because of his religious beliefs and he was persecuted for his refusal and he was motivated by his religious beliefs. And then the co-worker, who may not want to comply, is unsure what his motivations were and then... I thought the standard was that it had to show that he was being persecuted on account of one of the protected grounds, one of which is his religion, and that this has to be in some way sanctioned by the government. We have sort of officially sanctioned government persecution on account of religion. And religion seems to go to his internal state of mind, but not to anything that could be attributed to the government or to groups that the government was failing to control. He did state that he's a Christian and in so many words he stated that it is well known in his community that he is a Christian and that he does carry these beliefs. And for that reason, he did not want to comply because if he did comply, it would be very well known that he had gone against his Christian beliefs. It's in various places in the testimony where he does refer to this. So it's rolled up into sort of a matter of kind of unstated beliefs that were occurring in the milieu of his persecution in these particular circumstances. The judge analyzed it under a political opinion ground and then in front of the BIA, Mr. Hernandez raised the religious issue, but the BIA summarily affirmed. So it's not clear what the basis was for the BIA's determination, whether they agreed with the judge or if they actually analyzed the religious opinion. It's unclear, so I think it's difficult for this court to review that issue. If the court has no problems with the credibility issue, then I'll reserve the remainder of my time. That's good. Thank you very much. We've read the briefs in all of these cases. Good morning. May it please the Court. My name is Cindy Ferrier and I'll be representing the Attorney General in this matter. First, I'd like to make clear that the immigration judge based her decision not only on an adverse credibility determination, but also found even if, assuming, taking all of the testimony as true, the petitioner hadn't made out a claim for asylum. And she based that finding on the fact that she found that the incidents that he cited didn't rise to the level of persecution. Basically, there was one threatening phone call who he didn't know actually made the phone call and he didn't specify in his testimony as to what the threat actually was. The second phone call just said that you need to collaborate with us. It also didn't provide a threat to him. It just said you need to collaborate. And there was also no identification of that phone caller. The road barricade that he discussed doesn't seem to be attributed at all to his activities as a customs inspector or person, I guess. What about the 11 dead customs officers? The 11 dead customs officers, he never connects that to his claim. He says that... There's a sort of a job title connection, at least on the face of it. Wouldn't that give one pause? Sort of like in Iraq, if you're a police recruit and they kill a bunch of other recruits, wouldn't you feel threatened just by that fact alone? And if they've gone out in this situation, killed 11 apparently noncompliant customs officers, if that's your position as well, wouldn't that be credible to some evidence of persecution? I'm not sure that there's anything in the record actually which shows why those 11 agents were murdered. Was it disputed that they were? No, it wasn't. Well, there's nothing actually... What he presented was evidently a newspaper article, I think, in support of that claim. But none of that documentation was actually accepted as evidence into the record because it wasn't translated properly. So he essentially didn't have any objective evidence in support of his claims. But assuming that that part of his testimony was true, that those persons were murdered, and I don't think that the petitioner ever makes clear as to why they were murdered, but then he does say that it was done by the military. So even if we assume that that was because they were refusing to comply with corruption as well and that it was done by the military, he still hasn't shown that connection between this unidentified caller on the phone... You don't think that's enough? I mean, if you've got a group of your colleagues who are being shot and you get a couple of threatening phone calls, you don't think that's... Well, I'm just saying that there's nothing which shows that the military would have been involved in this particular case. Evidently, his work was referred to him by a government official, Victor Cesaris. This government official referred the import-export company, and that was his employer, evidently, at the time, who was requesting him to process these documents or process these auto parts and do them wrong, give a wrong valuation. But it's just all very tenuous. It's not quite sure how it all connects up, and so that's where I'm not sure that it's clear how those 11 agents would actually be connected with his case. But even if you could say that that would be a reasonable basis for him to fear, and certainly subjectively I can understand why he would fear it. I'm just not sure objectively it's been established as to how that all connects with this case. And then on top of that, as you were discussing with opposing counsel, why it would be that he would be persecuted on account of his religion. Well, assuming the record supported counsel's description, and I'm not accusing or misrepresenting the record, but just so you don't feel you have to quarrel with my hypothetical, let's assume that the record shows that he was a well-known Christian and that in carrying out his business he professed to be and was a moral man and he, after having second thoughts in this case, decided not to engage and go along with the corruption. And he was a known Christian, as the record showed. Why wouldn't that be sufficient to be persecution on a religious ground, since he's acting out of religious motivation? Well, he may be acting out of religious motivation, but the persecution wouldn't be on account of... But why not? Because if a Jehovah's Witness won't do certain things, or, you know, like work on a Friday or whatever, the objective manifestation of their action, of their religious belief, is the objective manifestation of a work act. And so in this case, the objective manifestation of his belief is that he will not go along with the corruption. So why isn't it on account of his religion? Well, I think that the motivation, if I'm understanding what you're saying right, I hope I'm not disagreeing with just your basic premise, but the motivation has to be the motivation for the persecution. So it's the motivation of the persecutor. Well, I understand, but they're persecuting him because of the objective manifestation of his religion. So if the objective manifestation is something that the persecutor is going after him for, and it's his religion that makes him do it, I'm having a little trouble understanding... You may be right, but I'm just having trouble. It sort of seems somewhat semantic, then, to say it's not on account of his religion. He wouldn't be doing it if it weren't his religion driving him to do it, let us say. Well, there's also a lot of persons, I think, as pointed out earlier, that maybe just choose not to be engaged in criminal activities, and it may not be on account of their own religious beliefs. They just choose to be moral and follow the law. Well, we have to take those cases one at a time. That's why I'm thinking of the refusal to work on a particular day, if that's the religion of someone, or the refusal to cut hair, or whatever, because of religion. I think normally those cases are analyzed on an imputed political opinion basis, or, I'm sorry, religion basis, or one of the two. And there is no evidence in this record which shows that the persecutors imputed that sort of opinion to him. I mean, I think normally when this court and other courts analyze cases where a person may be acting out of their own beliefs, and it's not evident as to why the persecution occurs, I think that normally the way that the courts look at it is, well, the motivation for the persecution has to be by the persecutor, and if it's not evident what that is, then they may find that the persecutor has imputed a political opinion or religious opinion. I'm not sure that that answers your question, but also... No, it just raises the question why that wouldn't work here. Well, I think because here there is no evidence in the record which supports the finding that they have, in fact, imputed any sort of opinion to him, or religious belief to him. Okay. But even moving on from that, again, the immigration judge also went on to say that there is no evidence that the petitioner has a well-founded fear of future persecution. He may, again, subjectively he may, but objectively, the testimony shows that there were persons asking for his whereabouts, unidentified persons, for four years after his departure, but that they haven't been asking about him any longer, and that would have been, you know, 1995 would have been the last time they would have asked about him then. And additionally, the immigration judge noted that if his fear was from the military, that the military is no longer in power, and while Guatemala certainly may not be the ideal country, that it is, in fact, a democracy, and that if there is corruption or if there is the potential for persecution, then they can address that through their basic judicial and democratic policies. So I think that that wraps up the government's position. Okay. Thank you. Your Honors, if Mr. Hernandez's testimony is taken as true, then the combination of all the threats that he endured do constitute persecution in the past. Therefore, the burden shifts to the government to show that he would not be persecuted in the future, and the government did not make an individualized showing, and the judge did not make an individualized analysis of this future persecution. She relied on the generalized country condition reports, which are not specific enough for the circumstances of this case. Also, I think objectively, he has established a well-founded fear of persecution because, as this Court has held, the Court does not require someone to hang around and wait until something bad happens to him. In this man's case, he received the threats and immediately left the country, especially in light of the 11 customs employees that had been murdered very recently. So he had a very good reason to fear for his life. And that's all I have for the rebuttal, Your Honors. Thank you. Okay. Fine. Thank you, both counsel. We appreciate the argument. The case argued is submitted. And we will proceed to Jimenez v. Gonzalez.
judges: Browning, Fisher, Bybee